In re BELIZE AIRWAYS LIMITED, Debtor.

William D. SEIDLE, as Trustee of the estate of Belize Airways Limited, Debtor, Plaintiff,

v.

KWIK COPY, INC. d/b/a Kwik Copy d/b/a Airport Office Supply, Defendant.

Bankruptcy No. 80–00199–BKC–SMW. Adv. No. 82–0022–BKC–SMW–A.

United States Bankruptcy Court, S. D. Florida.

Feb. 26, 1982.

David M. Levine, Miami, Fla., for plaintiff.

Richard W. Wasserman, Miami Beach, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came on to be heard before the Court on February 9, 1982, upon Plaintiff's Complaint filed herein to Avoid a Judicial Lien and to Recover a Preferential Transfer. The Court, having examined the pleadings and the evidence presented, having considered the agreed facts and the arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law.

On January 8, 1982, Plaintiff, William D. Seidle, as Trustee for the estate of Belize Airways Limited, Debtor (hereinafter "BAL") commenced this adversary proceeding under Part VII of the Rules of Bankruptcy Procedure to avoid judicial liens acquired by the Defendant and purporting to attach to the real and personal property of BAL's estate, or to the proceeds thereof, and to set aside and recover a preferential transfer of the sum of $3,817.26 made by BAL to the Defendant within ninety days of the filing of the involuntary petition which commenced this case. Plaintiff predicates his claims for relief on the avoidance powers with which he is vested as Trustee by virtue of §§ 544, 547 and 550 of the Bankruptcy Code, 11 U.S.C. §§ 544, 547 and 550. Plaintiff also seeks to recover his actual costs and disbursements incurred in the commencement and prosecution of this adversary proceeding.

This Court has jurisdiction of this adversary proceeding under 28 U.S.C. § 1471(b).

The following facts relevant to the Court's determination of the instant controversy were either established by the pleadings or stipulated to by the parties at trial:

1. On February 25, 1980, an involuntary creditor's petition was filed with this Court against BAL under Chapter 11 § 303 of the Bankruptcy Code. On March 11, 1980, an Order for Relief was entered under Chapter 11 upon the consent of BAL. On April 27, 1981, an Order for Relief was entered by this Court pursuant to 11 U.S.C. § 1112(b) converting the case to Chapter 7 of the Bankruptcy Code and appointing Plaintiff as Interim Chapter 7 Trustee. Plaintiff subsequently qualified and is presently acting as Trustee of the estate of BAL pursuant to 11 U.S.C. § 702(d).

2. On November 27, 1979, Defendant obtained a judgment against BAL in the aggregate amount of $3,760.41 in a civil action pending in the Circuit Court for Dade County, Florida under Case No. 79–14426–Sec. 19 (the "Judgment").

3. On November 30, 1979, an uncertified copy of the Judgment was recorded with the Office of the Clerk of the Circuit and County Court for Dade County, Florida at Official Records Book 10582, Page 1485. A true copy of the Judgment, as recorded, is attached to Plaintiff's complaint in this adversary proceeding as Exhibit "A".

4. On January 7, 1980, Defendant caused a writ of execution on the Judgment to be delivered to the Sheriff of Dade County. The writ of execution was returned fully satisfied on January 16, 1980 and the Defendant received on that date the sum of $3,817.26 from the Sheriff in full satisfaction of the Judgment.

5. The recovery of the sum of $3,817.26 by the Defendant pursuant to the return and satisfaction of the writ of execution is a transfer as that term is defined by 11 U.S.C. § 101(40).

6. The aforesaid transfer was a transfer by BAL of its property to the Defendant for or on account of an antecedent debt owed by BAL to the Defendant before such transfer was made.

7. Such transfer enabled the Defendant to receive more than it would have received if this case were a case under Chapter 7 of the Bankruptcy Code, such transfer had not been made and Defendant were to receive payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

8. The costs and disbursements incurred by Plaintiff in this adversary proceeding total $100.00, as follows: Adversary pro-

ceeding filing fee, $60.00; Court reporter attendance fee at deposition, $35.00; and Photocopy and mailing charges, $5.00.

The Defendant stipulated to the entry of partial judgment in favor of the Plaintiff on the First and Second Claims for Relief of the Complaint to the extent that its purported judicial liens against real and personal property of the estate of BAL, or against the proceeds thereof, which would have attached by virtue of the recording of the Judgment and the docketing of the writ of execution, are invalid against the Plaintiff in his capacity as Trustee pursuant to applicable Florida law and 11 U.S.C. §§ 544, 547 and 550. Entry of judgment in favor of Plaintiff on these Claims for Relief was deferred pending the adjudication of the Third Claim for Relief and, accordingly, shall be entered in accordance with these findings of fact and conclusions of law.

In the Third Claim for Relief of the Complaint, Plaintiff seeks to avoid and recover the aforesaid transfer of the sum of $3,817.26 as a voidable preference pursuant to 11 U.S.C. § 547(b). Section 547(b) of the Bankruptcy Code empowers the Trustee to recover transfers, either securing or paying antecedent debt, within a prescribed period of time prior to the commencement of the bankruptcy case. The purpose of the preference section of the Bankruptcy Code is to insure that particular creditors of the impending debtor do not receive full or partial satisfaction of their claims at the expense of other similarly situated creditors who do not receive such satisfaction. In short, a preferential transfer is an infraction of the bankruptcy rule of equality of distribution among all creditors of the Debtor.

The six elements of a voidable preference under 11 U.S.C. § 547(b), as applicable here,[1] are as follows:

1. A transfer of property of the debtor;
2. To or for the benefit of the creditor;
3. For or on account of an antecedent debt owed by the debtor before such transfer was made;
4. Made while the debtor was insolvent;
5. Made on or within ninety days before the filing of the petition;
6. That enables the creditor to receive more than such creditor would receive if the case were a case under Chapter 7, the transfer had not been made and such creditor received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

All elements of § 547(b) must be present before a transfer may be found to be preferential. *In re Kelley,* 3 B.R. 651 (Bkrtcy.E.D.Tenn.1980). The stipulated and admitted facts in this proceeding establish that the $3,817.26 received by the Defendant was a transfer of the property of BAL to the Defendant for or on account of an antecedent debt owed by BAL to the Defendant, the effect of which was to enable the Defendant to receive more than it would have received if such transfer had not been made and Defendant were to receive a distribution on its claim in this bankruptcy case. Accordingly, only three issues remain to be decided by the Court: (1) Whether the applicable 90-day period under 11 U.S.C. § 547(b)(4)(A) should be measured from the filing of the involuntary petition with this Court on February 25, 1980; (2) Whether BAL was insolvent as that term is defined by 11 U.S.C. § 101(26) at the time the transfer was made on January 16, 1980; and (3) Whether Plaintiff may avoid and recover from the Defendant the full sum $3,817.26 paid by BAL, notwithstanding the fact that a portion of this amount was allocated to Defendant's attorney's fees and costs incurred in connection with the prosecution of the Florida civil action against BAL.[2]

1. 11 U.S.C. § 547(b)(4)(B) contains special provisions regarding preferential transfers to "insiders" of the Debtor as defined by 11 U.S.C. § 101(25). 11 U.S.C. § 547(c) contains various exceptions or safe harbors to the Trustee's ability to avoid preferential transfers. None of these insider provisions or stated exceptions is applicable here.

2. The Defendant does not specify what portion of the $3,817.26 was utilized by the Defendant to satisfy its attorney's fees and costs of the

## I. The Applicable 90-Day Period

Section 547(b)(4)(A) requires that the transfer sought to be avoided by the Trustee must have been made "on or within 90-days before the date of the filing of the petition".

The Defendant's position is that the involuntary Chapter 11 petition as filed on February 25, 1980 was procedurally defective and, accordingly, failed to vest this Court with subject matter jurisdiction of the case. The Defendant concludes that by virtue of this alleged jurisdictional defect, the applicable 90-day period must be measured, if at all, from the entry of the Order for Relief under Chapter 7 on April 27, 1981, thereby rendering the January 16, 1980 transfer immune from attack by the Trustee as a voidable preference. At trial, the Defendant indicated that the basis of its claim that the involuntary petition was jurisdictionally defective was that the petition was filed by a single creditor when, in fact, BAL had far in excess of 12 creditors with qualifying claims thereby requiring the joinder of at least two additional petitioning creditors under 11 U.S.C. § 303(b)(1). The Trustee asserts that the claimed procedural defects in the involuntary petition are unrelated to the question of subject matter jurisdiction, that such defects were waived by BAL's consent to the entry of the Order for Relief under Chapter 11 on March 11, 1980 and that the Defendant, as a potential creditor,[3] never had and does not now have standing to collaterally attack the entry of the Order for Relief on March 11, 1980.

The Court agrees with the Trustee. The Defendant, in characterizing its defense as an attack on the subject matter jurisdiction of the Court, is attempting to confer upon itself as a potential creditor the standing it would otherwise lack to oppose an involuntary bankruptcy petition. Under 11 U.S.C. § 303(d), only a debtor, or a partner in a partnership debtor, may file an answer to an involuntary bankruptcy petition. The rationale underlying the statutory restriction on standing is that a creditor's purpose in opposing an involuntary petition is invariably to protect the preference or gain some other unfair advantage at the expense of other creditors. *See In re Earl's Tire Service, Inc.*, 6 B.R. 1019 (D.C.D. Del.1980).

The position adopted by the Defendant in this proceeding is not without precedent. Courts faced with the issue have consistently held that similar collateral attacks by disgruntled creditors will not be permitted especially where, as here, the alleged jurisdictional defects in the involuntary petition are merely procedural and have been waived by the debtor's consent to the entry of an order for relief. *Bumb v. Valley Electric Company*, 419 F.2d 107 (9th Cir. 1969) (defendant/creditor in preference action commenced by Trustee may not collaterally attack adjudication on the ground that two of three petitioning creditors were not, in fact, creditors); *Huttig Mfg. Co. v. Edward*, 160 F. 619 (8th Cir. 1908) (defendant/creditor in a preference action may not collaterally attack adjudication by alleging that one of three petitioning creditors was not a creditor); *Teiger v. Stephan Oderwald, Inc.*, 31 F.Supp. 626 (S.D.N.Y.1940) (defendant/creditor in a preference action may not collaterally attack adjudication by alleging that two of three petitioning creditors have no provable claims); *In re Earl's Tire Service, Inc.*, 6 B.R. 1019 (D.C.D.Del. 1980) (non-petitioning creditor had no standing to seek dismissal of involuntary petition on the ground that the petition was filed by one creditor when the alleged debtor had in excess of 12 creditors).

If, as the Defendant claims, there was a defect in the subject matter jurisdiction of this Court by virtue of the insufficient

---

Florida civil action. However, an examination of the Judgment attached to Plaintiff's Complaint as Exhibit "A" indicates that $500.00 was allocated to attorney's fees and $57.50 was allocated to costs.

3. If Defendant is compelled to disgorge the monies it received on January 16, 1980, it will be entitled to an extension of time to file a general unsecured claim against the estate of the Debtor. 11 U.S.C. §§ 101(9)(B), 502(h) and Bankruptcy Rule 302(e)(3).

number of petitioning creditors, then this Court would be obligated to notice that defect sua sponte. The Court rules, however, that such claimed defect is unrelated to the question of the Bankruptcy Court's subject matter jurisdiction and, accordingly, was waived by BAL's consent to the entry of the Order for Relief on March 11, 1980.[4]

The Court premises its ruling on well established precedent as summarized by the district court in *In re Earl's Tire Service, Inc.*, 6 B.R. at 1022:

> An examination of the authorities yields no support for the proposition that the Bankruptcy Court lacks subject matter jurisdiction when a creditor, with knowledge that the debtor has 12 or more creditors, files an involuntary bankruptcy petition without joining the required 2 additional creditors ... Since all parties concede that Earl's Tire was qualified to be a debtor under the Bankruptcy Code, it is difficult to perceive how an arguable defect in the procedural mechanism for commencing a bankruptcy action would deprive the Court of its subject matter jurisdiction. Indeed, the case law indicates that the number of petitioning creditors is unrelated to the question of the Bankruptcy Court's subject matter jurisdiction. The Supreme Court, in rejecting a creditor's challenge to the sufficiency of the number of petitioning creditors, has stated that "the filing of a petition, sufficient upon its face, ... clearly gives the Bankruptcy Court jurisdiction of the proceeding." *Canute Steamship Co. v. Pittsburgh Coal Co.*, 263 U.S. 244, 248, 44 S.Ct. 67, 68, 68 L.Ed. 287 (1923). Proof of the requisite number of petitioning creditors is required only if challenged by alleged bankrupt, *Harris v. Capehart-Farnsworth Corp.*, 225 F.2d 268, 270 (8th Cir. 1955),

and unlike subject matter jurisdiction, the bankrupt may waive its right to three petitioning creditors by failing to make a timely objection. See *General Kontrolar Co. v. Allen*, 124 F.2d 123, 127 (6th Cir. 1941). At least one court has expressly stated that the reason the requirement of three petitioning creditors may be waived is that "[s]uch jurisdictional defect does not go to the subject matter ..." *In re National Republic Co.*, 109 F.2d 167, 170 (7th Cir. 1940). In this case, Earl's Tire waived any right it had to raise defects in the petition, and consented to being adjudicated a bankrupt. Dunlop's claim that the Court lacked subject matter jurisdiction is without merit.

■ Accordingly, the Court holds that since jurisdiction was proper, the transfer in question was effected within 90 days of the filing of the involuntary petition on February 25, 1980. See 11 U.S.C. §§ 101(31), 348(a), and 547(b)(4)(A).[5]

## II. *Insolvency*

■ Section 547(f) of the Code specifically provides that for the purpose of § 547 "the Debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition."

The Trustee argues that the effect of § 547(f) is to require the Defendant to present some evidence in this proceeding that BAL was solvent on the date of the transfer in question, January 16, 1980. In the absence of such evidence, the Trustee further argues that he is not required to present any evidence on the issue of solvency but instead may rest on the presumption created by § 547(f). The Defendant in the instant proceeding offered no evidence

---

4. Even if BAL had contested the involuntary petition on this basis, joinder of the requisite number of additional creditors would have been permitted under 11 U.S.C. § 303(c) with no effect on the original filing date. See *In re Mason*, 12 B.R. 316 (Bkrtcy.D.Nev.1981); *In re J. V. Knitting Service, Inc.*, 4 B.R. 597 (Bkrtcy. S.D.Fla.1980).

5. The Defendant argues, alternatively, that even if jurisdiction was proper, the 90-day period should be measured from the entry of the Order for Relief on March 11, 1980 rather than from the filing of the involuntary petition on February 25, 1980. However, this argument, even if valid, would afford the Defendant no protection since the transfer on January 16, 1980 would have been effected within 90 days of the date of entry of the Order for Relief.

whatsoever to indicate that BAL was solvent on January 16, 1980. The Trustee then rested on this issue relying on the presumption.

The Court agrees with the position espoused by the Trustee. The Legislative History to § 547(f) indicates that the presumption created by that section is governed by the standards of Rule 301 of the Federal Rules of Evidence, which would leave the burden of proof on the issue of insolvency on the trustee but would not require him to present evidence on this issue unless the defendant creditor first comes forward with some evidence of the debtor's solvency on the date in issue. Stated otherwise, the effect of the presumption is to shift the burden of going forward so as to require the party against whom the presumption operates to come forward with some evidence to rebut the presumption. Were the rule otherwise, the § 547(f) presumption would be rendered meaningless. *See* H.R. 8200, H.R.Rep.No. 595, 95th Cong. 1st Sess. 375 (1977); S. 2266, S.Rep.No.989, 95th Cong. 2nd Sess. 89 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787; Fed.R.Evid. 301.

Cases construing § 547(f) have consistently supported the position adopted by the Trustee in this proceeding. *In re National Buy-Rite, Inc.*, 7 B.R. 407, 409–410 (Bkrtcy. N.D.Ga.1980); *In re Zuni*, 6 B.R. 449, 451 (Bkrtcy.D.N.M.1980); *In re Butler*, 3 B.R. 182, 185–186 (Bkrtcy.E.D.Tenn.1980). *See also In re Roco Corporation*, 15 B.R. 813, 818 (Bkrtcy.D.R.I.1981).

As the Court held *In re Butler*:

Congress has simplified the trustee's burden in preference actions in another way. Section 547(f) grants the trustee a presumption of insolvency during the 90 days before bankruptcy... The presumption of insolvency in the Code recognizes this, but permits the creditor against whom the action is pending to come forward with evidence of solvency. *The presumption is governed by Rule 301 of the Federal Rules of Evidence, which leaves the burden of proof on the issue of insolvency on the trustee, but does not*

*require him to present evidence unless the defendant creditor first comes forward with some evidence of solvency ... the creditor (in this proceeding) put on no proof to overcome the presumption of debtor's insolvency.* (words in parenthesis and emphasis supplied).

3 B.R. at 185–186.

Accordingly, the Court finds that the Trustee has met his burden of proof since the Defendant has failed to rebut the presumption contained in § 547(f) that BAL was insolvent on January 16, 1980, the date of the preferential transfer.

## III.   *The Extent of Trustee's Recovery*

■ The final issue to be decided by the Court is whether the Trustee may recover the entire $3,817.26 from the Defendant notwithstanding that a portion of that sum was allocated to Defendant's attorney's fees and costs of the Florida civil action. The Court rules that the entire sum may be recovered by the Trustee.

First, the Defendant has stipulated that the transfer of the $3,817.26 was a transfer by BAL of its property *to the Defendant* (Stip. of Facts ¶ 8). Second, although the portion of the $3,817.26 allocable to attorney's fees and costs may not actually have been received by the Defendant, such payments were made "for its benefit" (11 U.S.C. § 547(b)(1)) and resulted in a depletion of the funds of BAL which otherwise would have been available for distribution to other of its general unsecured creditors. *See In re Meyer's Inc.*, 15 B.R. 390, 392 (Bkrtcy.S.D.Cal.1981); *Matter of Furniture Den, Inc.*, 12 B.R. 522 (Bkrtcy.W.D.Mich. 1981); 4 *Collier on Bankruptcy*, ¶ 547.21 (15th Ed. 1981).

Plaintiff having established all the requisite elements under 11 U.S.C. § 547(b) is entitled to recover from the Defendant on his Third Claim for Relief the sum of $3,817.26 together with stipulated costs of $100.00. The Court will enter a judgment in accordance with these findings of facts and conclusions of law.

FINAL JUDGMENT

In accordance with the Findings of Fact and Conclusions of Law entered herewith, it is:

ORDERED and ADJUDGED as follows:

1. Defendant has no valid lien on any real or personal property of the estate of the Debtor or on the proceeds of any such property.

2. Defendant's judgment against the Debtor in the amount of $3,760.41 entered on November 27, 1979 in proceedings No. 79–14426–Sec. 19 pending in the Circuit Court for Dade County, Florida and recorded on November 30, 1979 with the Clerk of the Circuit and County Court for Dade County, Florida at O.R. Book 10582, Page 1485 and the writ of execution delivered pursuant thereto on January 7, 1980 to the Sheriff of Dade County are hereby declared to be null and void and invalid as judicial liens against property of the estate of the Debtor or the proceeds of any such property.

3. Plaintiff shall have and recover from the Defendant the sum of $3,817.26 plus costs in the amount of $100.00, making a total of $3,917.26 due to Plaintiff from the Defendant, for which sum let execution issue.

4. Pursuant to Bankruptcy Rule 302(e)(3) and conditioned upon the payment to Plaintiff of all sums due under Paragraph 2 of this Judgment, Defendant shall have 30 days from the date this Judgment becomes final to file a general unsecured claim against the estate of the Debtor in the amount of $3,917.26.